UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION

ALLEN HINKLE, JUSTIN BISH, and
RODNEY LALONDE,

        Plaintiffs,

v.

GULF INTERSTATE FIELD SERVICES,
INC.,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:

> ELECTRONICALLY
> FILED
> May 09 2017
> U.S. DISTRICT COURT
> Northern District of WV

CASE NO. ___1:17-CV-74 (Keeley)___

## ORIGINAL COMPLAINT

### SUMMARY

1.     Gulf Interstate Field Services, Inc. (Gulf Interstate) does not pay its Pipeline Inspectors overtime as required by the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* (FLSA).

2.     Plaintiffs Allen Hinkle, Justin Bish, and Rodney LaLonde each worked for Gulf Interstate as a Pipeline Inspector and were paid a day rate for all days worked.

3.     Although each of them regularly worked 60 (or more) hours a week, they did not receive any overtime pay as required by 29 C.F.R. § 778.112.

4.     Thus, this action seeks to recover the unpaid wages and other damages owed to Hinkle, Bish, and LaLonde.

### JURISDICTION AND VENUE

5.     Jurisdiction over Plaintiffs' FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2).

7.     Plaintiffs were employed by Gulf Interstate in this District and Division (Doddridge County) and a substantial portion of the work that is the subject matter of this Complaint was performed in this District and Division.

PARTIES

8.     Plaintiff Allen Hinkle was employed by Gulf Interstate as a Pipeline Inspector and paid according to Gulf Interstate's day rate pay plan.

9.     From August 2012 through December 2012, Hinkle was employed by Gulf Interstate as a Welding Inspector in West Virginia on a pipeline construction project for Mark West Liberty Midstream & Resources, LLC.

10.     From March 2013 through April 2013, Hinkle was employed by Gulf Interstate as a Welding Inspector in Ohio on a pipeline construction project for Mark West Liberty Midstream & Resources, LLC.[1]

11.     From April 2013 through June 2013, Hinkle was once again employed by Gulf Interstate as a Welding Inspector in West Virginia on a pipeline construction project for Mark West Liberty Midstream & Resources, LLC.

12.     In June 2013 through July 2013, Hinkle was once again employed by Gulf Interstate as a Welding Inspector in Ohio on a pipeline construction project for Mark West Liberty Midstream & Resources, LLC., and again from July 2013 through October 2013.

13.     From October 2013 through March 2014, Hinkle was employed by Gulf Interstate as a Welding Inspector in Missouri on a pipeline construction project for Enbridge Energy Partners, L.P.

---

[1]     Hinkle does not, in this lawsuit, seek recovery for any wages or other damages owed for the time period he was employed by Gulf Interstate in Ohio on the Mark West project. That project is the subject of another collective action lawsuit pending in the Southern District of Ohio in which Hinkle is an opt-in. *Hughes, et al. v. Gulf Interstate Field Services, Inc.*, Case No. 2:14-cv-00432 (S.D. Ohio).

2

14.     Plaintiff Justin Bish was employed by Gulf Interstate as a Pipeline Inspector and paid according to Gulf Interstate's day rate pay plan.

15.     From June 2011 through October 2013, Bish was employed by Gulf Interstate as a Utility Inspector in West Virginia on a pipeline construction project for Mark West Liberty Midstream & Resources, LLC.

16.     From October 2013 through February 2014, Bish was employed by Gulf Interstate as an Assistant Chief Inspector in West Virginia on another pipeline construction project for Mark West Liberty Midstream & Resources, LLC.

17.     From February 2014 through March 2014, Bish was employed by Gulf Interstate as an Assistant Chief Inspector in Ohio on a pipeline construction project for Mark West Energy Partners, L.P.[2]

18.     Plaintiff Rodney LaLonde was employed by Gulf Interstate as a Pipeline Inspector and paid according to Gulf Interstate's day rate pay plan.

19.     From May 2012 through September 2013, LaLonde was employed by Gulf Interstate as a Chief Inspector in West Virginia on a pipeline construction project for Mark West Energy Partners, L.P.

20.     From September 2013 through September 2014, LaLonde was employed by Gulf Interstate as a Chief Inspector in Ohio on a pipeline construction project for Mark West Energy Partners, L.P.[3]

---

[2]     Bish does not, in this lawsuit, seek recovery for any wages or other damages owed for the time period he was employed by Gulf Interstate in Ohio on the Mark West project. That project is the subject of another collective action lawsuit pending in the Southern District of Ohio in which Bish is an opt-in. *Hughes, et al. v. Gulf Interstate Field Services, Inc.*, Case No. 2:14-cv-00432 (S.D. Ohio).

[3]     LaLonde does not, in this lawsuit, seek recovery for any wages or other damages owed for the time period he was employed by Gulf Interstate in Ohio on the Mark West project. That project is the subject of another collective action lawsuit pending in the Southern District of Ohio in which LaLonde is an opt-in. *Hughes, et al. v. Gulf Interstate Field Services, Inc.*, Case No. 2:14-cv-00432 (S.D. Ohio).

21.     From February 2015 through June 2015, LaLonde was employed by Gulf Interstate as an Assistant Chief Inspector in New York on a pipeline construction project for the Williams Companies, Inc.

22.     From June 2015 through July 2015, LaLonde was employed by Gulf Interstate as an Environmental Inspector in Virginia on a pipeline construction project for the Williams Companies, Inc.

23.     Defendant Gulf Interstate is a wholly owned subsidiary of Gulf Interstate Engineering Company (GIEC).[4]

24.     Gulf Interstate is part of an enterprise with GIEC.

25.     The GIEC Enterprise provides a broad range of services to the oil and gas industry.

26.     The GIEC Enterprise employs thousands of workers in many states and countries.

27.     Its gross revenues have exceeded $100 million for each of the past three years.

28.     Gulf Interstate was incorporated in Delaware, and maintains its corporate headquarters in Houston, Texas.

29.     Gulf Interstate provides inspection services to the oil & gas industry.

30.     It provides construction management, construction inspection, vendor inspection, environmental inspection, materials management, and other services for oil and gas transportation and storage projects throughout the United States.

31.     Gulf Interstate employs Pipeline Inspectors (such as Plaintiffs) who perform inspection services on oil and gas pipelines for energy, public utility and pipeline companies.

---

[4]     *See* Gulf Interstate Corporate Organization, *available at* http://www.gie.com/about-us/corporate-organization (last visited April 12, 2017) (stating Gulf Interstate Field Services is a "wholly owned subsidiary providing construction management and construction inspection services").

32.     Gulf Interstate's financial results are driven largely by the number of Pipeline Inspectors performing services for Gulf Interstate's customers and the fees that Gulf Interstate charges the customers for these services.

33.     Gulf Interstate charges its Pipeline Inspectors' services out to Gulf Interstate's customers on a per project basis, including a daily rate, per diem charges, mileage and other reimbursement items.

34.     Gulf Interstate employs individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by the FLSA.

35.     Gulf Interstate's annual gross volume of business exceeds $500,000.

36.     Gulf Interstate is not an independently owned and controlled local enterprise within the meaning of 29 U.S.C. § 207(b)(3).

## FACTS

37.     Each of the Plaintiffs was employed as a Pipeline Inspector by Gulf Interstate, performing and reviewing inspections on gas pipelines.

38.     Gulf Interstate employed Plaintiffs to perform inspection duties on behalf of its customers.

39.     Plaintiffs performed routine inspections of newly-laid pipes.

40.     Plaintiffs are blue collar workers who are primarily engaged in manual labor or basic office duties.

41.     Plaintiffs' work as a Pipeline Inspector required the utilization of techniques and procedures obtained primarily from industry manuals, standards and codes. *See* 29 C.F.R. § 541.203(g).

42.     The primary duty of Plaintiffs as Pipeline Inspectors was to observe the construction of the pipeline, compare the work being performed to insure that it follows the plans and specifications set out by the pipeline owner and construction contractor, conduct non-destructive testing when necessary to insure compliance, to point out any variances between the work performed and the plans and specifications to the work crew and their foreman in the first instance, to note the progress of the construction project to report to the pipeline owner and construction contractor, and to report any variances in the work being performed and the plans and specifications to the pipeline owner and/or the construction contractor.

43.     Plaintiffs worked within closely prescribed limits provided by Gulf Interstate, the pipeline construction contractor, the pipeline owner, the American Petroleum Institute, the American Society of Mechanical Engineers, the American Welding Society, and the United States Department of Transportation. *See* 29 C.F.R. § 541.203(g).

44.     Pipeline Inspectors do not prepare the plans and specifications for the pipelines they inspect.

45.     Pipeline Inspectors do not have the authority to change or authorize changes to the plans and specifications provided by the pipeline owner and construction contractor.

46.     Pipeline Inspectors do not have the authority to direct the work of the crew(s) whose work they are inspecting.

47.     Prior to hiring on, each Pipeline Inspector receives an offer letter from Gulf Interstate.

48.     Under the terms of the arrangement between Gulf Interstate and the Pipeline Inspectors, the Pipeline Inspectors will be paid a set amount per "Day Worked."

49.     On August 13, 2012, Gulf Interstate sent an offer letter to Allen Hinkle for a Utility Inspector position with MarkWest.

50.     Hinkle's compensation was stated as:

| Compensation: | |
|---|---|
| Salary: | $267.00/Day Worked |
| Per Diem: | $1,141.00/Week |
| Phone: | $50.00/Week (Paid by GIFS) |
| Computer: | $30.00/Week |
| Mileage: | $.555/mile – 150 miles per day max. |

51.     On March 3, 2013, Gulf Interstate sent an offer letter to Allen Hinkle for a Welding Inspector position with MarkWest. Hinkle's compensation was stated as:

| Compensation: | |
|---|---|
| Salary: | $362.00/Day Worked |
| Per Diem: | $1,141.00/Week (As approved by Client) |
| Phone: | $50.00/Week (Paid by GIFS) |
| Computer: | $30.00/Week (As approved by Client) |
| Mileage: | $.565/mile – 150 miles per day max. |

52.     On October 24, 2013, Gulf Interstate sent an offer letter to Allen Hinkle for a Technical Inspector position with Enbridge. Hinkle's compensation was stated as:

| Compensation: | |
|---|---|
| Salary: | $419.95/Day Worked |
| Per Diem: | $1,141.00/Week (As approved by Client) |
| Mileage: | $.565/mile – 100 miles minimum per day worked. |

53.     Other Pipeline Inspectors employed by Gulf Interstate received similar letters, including:

Thomas Hughes (January 3, 2013)

| Compensation: | |
|---|---|
| Salary: | $337.00/Day Worked |
| Per Diem: | $1,141.00/Week |
| Computer: | $30.00/Week |
| Mileage: | $.565/mile – 150 miles per day max. |

Gabriel Suazo (January 14, 2013)

| Compensation: | |
|---|---|
| Salary: | $337.00/Day Worked |
| Per Diem: | $1,141.00/Week (As approved by Client) |
| Phone: | $50.00/Week (Paid by GIFS) |
| Computer: | $30.00/Week |
| Mileage: | $.565/mile – 150 miles per day max, |

7

54.     The employment arrangements between Gulf Interstate and Plaintiffs prior to Spring/Summer 2014 do not include any mention whatsoever of a minimum guarantee of a certain amount of pay which is to be paid regardless of the number of hours or days worked.

55.     In the Spring/Summer of 2014, following a January 2014 meeting with Plaintiffs' counsel, Gulf Interstate began to amend its contracts with its customers and to send out "correction" letters to its Pipeline Inspectors purporting to establish a minimum guarantee of a certain number of days pay to be paid regardless of the number of hours or days worked.

56.     Thus, on July 22, 2014, Gulf Interstate sent to Hinkle an offer letter for a Welding Inspector position with MarkWest Energy Partners.

57.     His compensation was now stated as:

| Compensation: | |
| --- | --- |
| Fixed Salary | $355.00/Day – Guaranteed five (5) days per week |
| Work Week. | Monday-Friday (see explanation below) |
| Holidays | Holidays will be paid at the Fixed Salary Rate, whether worked or not (as approved by Client) |
| Phone. | $30.00/Week (Paid by GIFS) A phone allowance will be paid and treated as taxable income |
| Computer | $30.00/Week (As approved by MarkWest) A computer allowance will be paid and treated as taxable income. |
| Per Diem. | $170.00/Calendar Day (as approved by client) |

58.     However, each of the post-Spring/Summer 2014 Correction Letters also contains the following language:

> You will be paid your guaranteed salary for the work week if you are at the job site and ready and willing to work

59.     Thus, Gulf Interstate placed an additional condition on Pipeline Inspectors receiving their Day Rate that they had to be present at the job site *and* ready and willing to work.

60.     Such a condition is entirely consistent with a Day Rate, but entirely inconsistent with a salary basis.

61.     Gulf Interstate pays its Pipeline Inspectors a day rate for the work they perform.

8

62.     While Gulf Interstate does not keep accurate records of the hours Pipeline Inspectors work (Gulf Interstate instructs its Pipeline Inspectors to record only 10 hours per day on their timesheets regardless of whether the Pipeline Inspector worked more than 10 hours that day), Gulf Interstate knows its Pipeline Inspectors regularly work more than 40 hours in a week.

63.     In fact, the timesheets submitted to Gulf Interstate regularly indicate 60 or more hours worked in a week.

64.     Nonetheless, Gulf Interstate did not, and does not, pay its Pipeline Inspectors overtime compensation for hours worked over forty per workweek.

65.     Because its day rate system does not pay non-exempt workers overtime for hours worked in excess of forty in a week, Gulf Interstate's day rate system violates the FLSA.

66.     Gulf Interstate is aware its payment plan is illegal.

67.     Gulf Interstate knows of the FLSA's requirements because it pays overtime to a number of its employees.

68.     In addition, Gulf Interstate has received a number of complaints regarding its overtime pay practices with respect to Pipeline Inspectors.

69.     Gulf Interstate nonetheless recklessly disregarded its overtime obligations.

70.     In 2011, prior to the start of the relevant time period in this case, the United States Court of Appeals for the Tenth Circuit held that a similar compensation scheme by an oilfield services company was not only unlawful, but constituted a willful violation of the FLSA. *See Mumby v. Pure Energy Services (USA), Inc.*, 636 F.3d 1266, 1268 (10th Cir. 2011).

71.     Since *Mumby*, many oil and gas service companies reclassified their daily rate workers to come into compliance with the FLSA. Gulf Interstate, however, did not do so.

9

72.     Hinkle, Bish, and LaLonde were each pre-notice opt-ins in a case filed as a collective and class action in the Commonwealth of Pennsylvania. *Sloane, et al. v. Gulf Interstate Field Services, Inc.*, Civil Action No. 2:15-cv-01208 (W.D. Pa.), *venue transferred*, 4:16-cv- 01571 (M.D. Pa.).

73.     Hinkle filed his consent to sue in the *Sloane* matter on November 23, 2015.

74.     Bish filed his consent to sue in the *Sloane* matter on November 25, 2015.

75.     LaLonde filed his consent to sue in the *Sloane* matter on March 1, 2016.

76.     On March 24, 2017, the *Sloane* court denied Plaintiff's Motion for Collective and Class Certification and dismissed the claims of opt-ins Hinkle, Bish, and LaLonde – stating specifically they "were dismissed with prejudice." *Sloane, et al. v. Gulf Interstate Field Services, Inc.*, Civil Action No. 4:16-cv- 01571, ECF No. 192. at p. 4 (M.D. Pa. March 24, 2017).

77.     Plaintiffs requested the *Sloane* court amend or clarify its order, as the denial of conditional certification does not permit a dismissal with prejudice. *Lusardi v. Lechner*, 855 F.2d 1062, 1079 (3d Cir. 1988) ("[a] district court has no power or jurisdiction to rule on the merits of the claims of individual members of a putative opt-in class when it denies class certification. This is clear legal error.").

78.     On April 13, 2017, the *Sloane* court responded that, despite the language in its Order, it did not purport to dismiss Hinkle, Bish, or LaLonde's claims with prejudice. *Sloane, et al. v. Gulf Interstate Field Services, Inc.*, Civil Action No. 4:16-cv- 01571, ECF No. 197. at p. 2 (M.D. Pa. April 13, 2017).

79.     This case followed.

## COUNT I
### VIOLATION OF THE FLSA

80.     All previous paragraphs are incorporated as though fully set forth herein.

81.     The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1-½) times the regular rate at which he is employed. *See* 29 U.S.C. § 207(a)(1).

82.     The FLSA provides that, if an employee is paid a flat sum for a day's work or for doing a particular job, and if he receives no other form of compensation for services, the employee is entitled to extra half-time pay at his regular rate for all hours worked in excess of forty (40) in the workweek. *See* 29 C.F.R. § 778.112.

83.     Gulf Interstate's compensation scheme applicable to Plaintiffs failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

84.     Plaintiffs are not exempt from the overtime requirements of the FLSA.

85.     Gulf Interstate acted knowingly and/or with reckless disregard of the rights of Plaintiffs in failing to compensate Plaintiffs at a rate of one and one-half (1-½) times their regular hourly wage for hours worked in excess of forty (40) hours per week, in violation of 29 U.S.C. § 207(a)(1).

86.     During all relevant times, Plaintiffs were covered employees entitled to the above-described FLSA protections.

**PRAYER**

WHEREFORE, Plaintiffs seek the following relief:

A.     Back pay damages and prejudgment interest to the fullest extent permitted under the law;

B.     Liquidated damages to the fullest extent permitted under the law;

C.     Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and

D.     Such other and further relief as this Court deems just and proper.

11

Dated: May 8, 2017                      Respectfully submitted,

                                        **BRUCKNER BURCH PLLC**

                                            /s/ James A. Jones
                                        By: _____
                                        Richard J. (Rex) Burch (TX 24001807)*
                                        James A. Jones (TX 10908300)*
                                        8 Greenway Plaza, Suite 1500
                                        Houston, Texas 77046
                                        Telephone: (713) 877-8788
                                        Facsimile: (713) 877-8065
                                        rburch@brucknerburch.com
                                        jjones@brucknerburch.com


                                        Shannon J. Carson (PA 85957)*
                                        Sarah R. Schalman-Bergen (PA 206211)*
                                        Alexandra K. Piazza (PA 315240)*
                                        BERGER & MONTAGUE, P.C.
                                        1622 Locust Street
                                        Philadelphia, PA 19103
                                        Telephone: (215) 875-3000
                                        Facsimile: (215) 875-4604
                                        scarson@bm.net
                                        sschalman-bergen@bm.net
                                        apiazza@bm.net

                                        *Application for Pro Hac Vice Admission to be Filed


                                        **LAW OFFICES OF KELLY REED, PLLC**

                                            /s/ Tamara Blackmer Williamson
                                        By: _____
                                        Tamara Blackmer Williamson (WV Bar No.
                                        10035)
                                        Law Offices of Kelly R. Reed, PLLC
                                        3118 Grafton Road
                                        Morgantown, WV 26508
                                        Telephone: (304) 292-2020
                                        Facsimile: (304) 292-2110
                                        williamson@kellyreedlaw.com


                                        *Attorneys for Plaintiffs*

12